Good morning. Michael Colantuno appearing on behalf of the Appellant County of Sacramento. The briefs cover an awful lot of territory and, in hindsight, perhaps in not the most orderly way. I think it's helpful if I start by restating what I think the rule of law that I'm advocating is. We believe that Insurance Code 533 is limited to indemnity or insurance for one's own conduct involving moral fault. Given the importance the legislature ascribes to the Fair Employment and Housing Act, failure to prevent harassment, discrimination, and retaliation is moral fault when an insured can control it. But there is no moral fault in a county board of supervisors' failure to control a constitutionally independent sheriff. How do you deal with just all these cases that say this action is a direct action? I think they use the label direct, but the conclusion the court is reaching is that the legislature has determined that employers are liable for discrimination, retaliation, and harassment. And we are not arguing liability. We're arguing only insurability. So what my opponents do is conflate direct liability in the sense that the legislature has defined employer to include public agencies with moral fault. But there is no moral fault here because... Well, what case says there has to be moral fault in order for there to be direct liability? With respect, Your Honor, I think there are many. Well, what's your strongest case to support the proposition that this provision only applies if there is moral fault? Well, let me start with Malugan v. Swiss Canadian. And this is a quote. Unfortunately, I don't have the page number. It says Section 5... What's that citation? Malugan, M-E-L-U-G-I-N v. Swiss Canada. Was that in your brief? It is. Is that a California case? It is. The citation is 50 Calap 4th, 658. Got it. Thank you, Your Honor. So let me give you a short quote from Malugan. Section 533 bars coverage only for an alleged act which is inherently harmful, intentional, and willful. Right. They don't say anything about moral. Let me get to the second sentence, if I may, Your Honor. Section 533 does not bar coverage for conduct which may be wrongful but which is not intentional or willful, and here I add emphasis, from the standpoint of the insured. So take another case. That doesn't help you in my view, but if that's your strongest case, you're in trouble. Okay. I'm up to the challenge, if I may. So following that discussion in Malugan, the court cites Lisa M. v. Henry Mayo New Hall Memorial Hospital, and we do not brief that case, but because it's cited, I think it's worth exploring in a moment. The citation is 1995, 12 Cal 4th, 291. The jump site is page 305. The facts there are that an employee of a hospital seduced a patient. That employee's behavior from the standpoint of the insured hospital may not have been morally culpable, but from his own perspective it absolutely was, and that's the point. The actor can be engaged in knowingly wrongful conduct. No one here is defending Sheriff Jones or his command staff. What they did generated liability. A jury has assigned liability. We've paid the liability. The question is only insurability. So you don't dispute the fact that the county is the employer for these purposes, correct? I do not dispute that the county is the employer, correct. So the question is, do you conflate the county as an institution with a constitutionally independent sheriff's command staff? If you do, I lose. But I think that conflation. The county is the one who conflated it if it were conflated because the county in the pleading said, do not sue the sheriff, sue the county. The county is the proper party numerous times. So if it were conflated, it's the county that conflated it throughout the proceedings. Or purposes of liability. But can you now separate it now that you have accepted the liability and the designation as employer? Can you now undo that? Yes, because. What case says that? Let me give you several cases that distinguish liability, which is what we're talking about, Your Honor. Well, I understand that there's a distinction between liability and insurability. But for purposes of this statute, is there a case that says once you become liable as the employer, that you can evade the provisions of this particular statute? Malugan is the best case. And let me give you the facts in Malugan. You don't have to give me the facts. I'm not persuaded that Malugan gets you where you need to be. So you can move on to another argument. For me, that's not persuasive. Let me just reorient this a little bit. I mean, if this was just a private company and your client. I would not be here. Right. And so that's why I think your argument seems to be we're different than a private company, and here's why, because the sheriff was not really under my client's control. I think that's a fair point. It's just that I'm not sure this is the proper forum to raise that argument. That seems like an argument for essentially a carve-out to 553 to be asking the California legislature to say, you need to treat counties different. We're different as insureds than a regular employer. And the difficulty I have with your position is that what you're arguing for sounds rational as a policy matter, but there's less support for that distinction in the cases as far as I can tell. Well, let me give you the cases which I think should entitle me to victory today and that should at least persuade you that this is a proper question for certification to the California Supreme Court. This is not a case where I'm asking for an amendment to legislation. I do that in the legislature, not in courts. Let me give you the list of cases, and I'll be honest. My opponents don't brief them. They don't have an answer to these cases. They simply prefer to ignore them. So first is Turlock, in which the city attorney was adjudged to have engaged in fraud on behalf of her city, and the court nevertheless found coverage for the city. How is a city attorney, a constitutional officer with far less independence than a sheriff, different than the sheriff here? So Turlock is a very powerful case. Minkler is a case in which a son uses his mother's home to molest Little League players. They sue the son, and they sue the mother for negligent entrustment and failure to supervise. And the court, the California Supreme Court, says the mother is insured even though the son's conduct, an additional insured under the policy, was obviously wrongful, willful, always wrong, never defensible, et cetera. Aronson is a case from the 1950s in which the California Supreme Court, in an admirably terse decision by Chief Justice Gibson, said that a father had insurance for his son's alleged arson of his school. Was 553 at issue in those cases? Absolutely. Every case I'm mentioning now is a 533 case. 533. So Turlock is not discussed in my opponent's brief. Minkler is not addressed in my opponent's brief. Aronson gets very brief treatment. But Aronson's an old and admirably terse case that says the son may have committed arson. We do not have to determine the son's subjective intent. The father is insured because there was nothing morally culpable about the father's behavior. Nuffler is a case in which the nephew and conservator of a business owner burned the business down before he inherited it, and there was insurance coverage for the conserved owner and the entity. The Lugan we've mentioned. But Lugan is worth noting because it's an employment discrimination case under FEHA. And in that case, it's an unusual case because it came up on summary judgment that was probably not litigated especially well, where all that was before the summary judgment court was the complaint in the underlying lawsuit and the policy. There was no other facts. But on those facts, the court said, we cannot determine that liability was so plainly based in willful misconduct that there's no insurance. So that's Malugan. Liberty surplus is a relatively recent case. This is a situation in which a contractor is rebuilding a high school. One of the contractor's employee engages in inappropriate sexual conduct with a minor female. The insurer says this is willful misconduct. You're not insured. And the court said the contractor's conduct of negligent hiring, retention, and supervision is not willful. Do you dispute that FEHA retaliation is not willful? I mean, if it were committed by somebody else who's not a public employer, it would be willful, right? Correct. The question is willful by whom, and could we control him? Counsel, before we move on, I'm in the Minkler case that you cited first. Could you tell me where that case discusses Section 533? Let me find my notes on that, Your Honor. So Minkler. My apologies for not having the citation immediately available. I don't see it there. That's why I asked you the question if those cases involved application of that provision. So Minkler, it's footnote 4, and I'll read you that footnote or the portion of it. Well, you don't have to read it to me. Tell me what page you're on, and I'll read it to you. I don't have the page. I just have the footnote number, I'm afraid. Okay. It's a policy against insurance for one's own intentional sexual misconduct. I can read it myself. Okay. I don't see a citation to 533. Footnote 4 is speaking to the policy against insurance for one's own intentional sexual conduct. I get that. But that is 533, Your Honor. But it doesn't specifically address that statute. That's why I was asking you the question. And you said, yes, it involved that statute, but it does not interpret that statute. So I understand that you're citing it for the principle. Got it. But it does not deal with that statute. Let me take another attack on this, if I might. There's enough at stake here for the law of California that I should take both approaches. What are the policies that we as lawmakers, law interpreters, are wrestling with when we deal with liability, immunity, and insurability? One is we want to discourage this conduct. Nothing about shutting parks and libraries in Sacramento County is going to discourage this conduct. The board simply can't order the sheriff around and cannot control his personality policies. Secondly, there's a ---- Why not? Why can't the county make the sheriff comply with the law? Because he's constitutionally immune. But the county does have methods for bringing into your budget methods. True. We do. You have many methods for making the sheriff comply with county policies. Now, whether you have the fortitude to do that is something different. But there are many mechanisms that a county has that it can use. I represented a Las Vegas Metropolitan Police Department for many years, and the county had the purse strings for that agency, and that wields a lot of power. So I'm not really persuaded by the fact that the county had no power over the sheriff. Well, let's address that as you've raised it. There is a limit to our budget authority. We cannot destroy the office, and we cannot assign its duties elsewhere. So there are cases in which a city attorney was ---- they tried to rein him in by taking his investigators away. The court said, You can't do that. You can't destroy the office. There is a sheriff's case in which ---- this is Butte County versus Superior Court ---- in which they cut the sheriff's budget in a fiscal crisis. The sheriff sued saying, Give me more money. And the court said, We will not, as a court, interfere with budgetary decisions to the extent that you have preserved the office. And lastly ---- There's a line. I agree. It's fair that there's a line. But that doesn't take away the fact that the county is responsible as the employer. That's the problem for every employer, to try to rein in rogue employees. And so that's something that the county has to grapple with, but you don't get to give that liability to the insurance company. The insurance company has even less control over the sheriff than you do. So why should the insurance company bear this liability simply because you make the assertion that you can't control the sheriff? Because they sold the policy that expressly covered it and took our premiums. Well, but does it cover it? That's the problem, is under the statute, is it covered? And that's the question that we're arguing today. So let's look at these policies. Council, could I just interject a quick question here? I think you said something about certification earlier. Yes. I believe this. If you don't believe me that this line of 533 cases or the policy embodied in 533 is adequate for a decision, then I think this is an appropriate case because my opponents do ---- What would be the question? What would be the question that we would certify? Is 533 such that insurers cannot sell and counties cannot buy insurance for violations of FEHA, of conduct by constitutionally immune officers, of which I'm aware of only two, the sheriff and the DA, and they are immune because we want a nonpolitical criminal justice system. One can argue about whether we get it, but that's our goal. And because of that goal, there's very little power. And I don't think there's any lack of fortitude, in Sacramento County in particular and in Los Angeles County in particular, where they have tried very hard to rein in very willful sheriffs who have done real harm. Voters elected these men. The voters may eventually choose not to reelect these men, but while they're in office, there's precious little the Board of Supervisors can do, try as they may. And the Board of Supervisors, in my judgment, is far more responsive to the concerns of the community about fair, community-based, respectful justice than some of our sheriffs have been. You may reflect on how we actually get rid of sheriffs in California. Usually the voters have to do it. In one recent case, a sheriff was excluded from office under Government Code Section 3060. That's a civil indictment by a grand jury leading to a full jury trial, and it happened once after really egregious conduct by the Santa Clara sheriff. It's a difficult situation. There's no question about it. The issue becomes what the statute provides. Indeed. And whether or not this is covered under the statute. It's a difficult decision. And the statute is not a paragon of craftsmanship. We have an opinion from the California Supreme Court, J.C. Penney, that says, read literally, Section 533 is internally inconsistent. Its first sentence purports to exclude coverage for all willful acts. The second sentence, however, expressly provides that the insured's negligence does not allow an insurer to disclaim coverage. It was written in 1872. It has never been amended. All of the other statutes we're discussing, FEHA, the Government Claims Act, the immunity principles, are modern, frequently amended, and reflect nuanced balancing of competing propositions. The other point I would make before I try to save a minute or two for rebuttal, because I respect my opponent, and I'm sure he'll say things that I want to respond to. The principles, the cases tell us that you do not need uninsurability. You do not need to create uninsurable liability, which is strict in some cases, in order to deter. That there are other tools for deterrence, and the liability itself is a tool. At the end of the day, my client's going to pay at least $2 million here because of what those men did, and we're not asking for that $2 million back, but we do want $4.9 million back. And with that, unless there's a question from the bench, I'll reserve. I have a question. Please. And I'll ask Judge Altshuler to please give you a little rebuttal time. I'm using your time here. My question is this. I apologize. I don't recall if in your brief you stated in your brief a precise question to be certified. We did. And I can paraphrase it for you now. The question is, is there uninsurability under 533 with respect to the conduct of a constitutionally immune sheriff? Our question is specific to sheriffs. I will admit that it probably applies to district attorneys, although the personnel authority of district attorneys is not governed by the police officer's Bill of Rights, except as to their investigators. So even in that sense, the sheriff is a pretty narrow and strongest case. Possibly the DA, nobody else. Even though we elect our other department heads in our counties, we have far more control over them because they're not. Thank you. Thank you. I'll get out of your way. All right. Thank you, counsel. Good morning, Your Honors. Jamie Tenereau on behalf of Appellee Everest National Insurance Company. May it please the Court. The district court did not commit reversible error. California law, Supreme Court authority and appellate authority below is clear, is not in dispute, as Your Honors' questions implied or expressly stated, a intentional retaliation claim under FEHA, Government Code 12940H, is predicated on direct liability. The Court has said that it is not based on vicarious liability. The county's principal argument below and here on appeal is that they should not bear the burden because it was not their fault because they are just simply vicariously liable for the torts committed by their employees in the scope of their employment. That premise and conclusion is not supported. Again, the California Supreme Court has said it's a direct liability claim. They have tethered that to the concept that it requires employee or express conduct, action, that affects a term, condition, or privilege of employment. Counsel, what's your response to opposing counsel's position that because the sheriff is a constitutional officer with immunity, they can't control the sheriff and should not be liable for the sheriff's actions? What's your response to that? I think each of you have brought up a proper basis and retort to that. They do have control, Your Honor, and the case law is there. There are certain budget constraints against the sheriff's department with limits. There are also counties that have enacted ordinances that have put the financial burden on the sheriff if the sheriff is the one who in fact did an intentional tort. There is also what I think is in disguise here, and I know the county is claiming that they're not arguing it, but I think they are, and this is not the forum to do it. They have cited the Domino's case, Patterson. In that, the California Supreme Court evaluated whether a franchisor could be an employer for FEHA purposes of a franchisee, and in that narrow issue, a predicate question that is not here, the court said no, and they looked to control issues. These are the same issues that the county of Sacramento is making here. The sheriff is constitutionally appointed. The sheriff is elected. He's a rogue sheriff that we cannot control. He is the one that doles out the daily duties of the deputies and his management staff. They are all directed, again, not at the question of liability under FEHA for an employer, which the county has admitted in this court and below that they were the employer. What this is targeting, what the agenda is behind the control issues is to say we need to walk back that below we admitted that we are the employer. We did it in the underlying Hagedorn action. We told the court. We told the jury we are the employer. The sheriff's department is not. We had them instructed on direct liability. There was no instruction on vicarious liability in answering the pleadings and in taking counsel. If I could interject a question on that. Clearly, it seems to me the California authority makes the point that the county would have direct liability here. But liability could be distinguishable from insurability. And the question I have is why should we not certify to the California Supreme Court the question that your opponent raises whether the direct liability for retaliation by an official who is immune from control, can't be controlled, is insurable under 533? I don't think that's the question before this court, Your Honor, respectfully. There is California framework in place from the highest level down. The county has admitted that they were the employer. I understand this is the liability part of it, but I'll get to your insurability question. They then have said that under FEO, the California Supreme Court has said that that is direct liability. They have ruled out vicarious liability as the predicate underlying theory on which employers are liable. So what we have here is that the county is directly liable. Now for the insurability part, we're talking about indemnity here. We're not talking about defense. The California Supreme Court has also said that liability is determined upon the facts that were determined at trial and the theory of liability. So we bring that substantive law, the insurance coverage law, and we say the basis of liability was direct liability. It is a finding of moral fault on the county by preforce of FEHA, saying that the employer is directly liable because it is the employer's will that they have committed these adverse employment actions against their employees in retaliation and that the will is just merely carried out by their employees who they've delegated the authority to do so. Also, insurance code 533, JCPenney is a California Supreme Court rule. Counsel, on that last point here, however. I'm sorry, excuse me? On the last point that you raised, the county didn't delegate to the sheriff. The sheriff is elected and independent. The sheriff may be elected and independent, but the powers here, Your Honor, are through the county. The sheriff is elected. The sheriff's department is staffed. The county advertises for employment vacancies for the sheriff's department. The county funds the salaries. The county sets the salaries. The county is the one that has an employee handbook that identifies the sheriff's department as one of the departments among many within its corporate structure, and they say that the employee handbook is not the employment contract. Rather, you have to go to the individual contracts. Here, those individual contracts, Your Honor, are between the county of Sacramento and the sheriff's associations, the Deputy Association and LEMA, Law Enforcement Management Association. And within those contracts, they say that the right to control the terms, conditions, of employment are vested in the county. So the county is the employer. And again, I think that whole line of argument goes to the county wants to walk back that they're not the employer, but they admitted below that they are. I think the county clearly under state law, just speaking as one judge, under state law the county is the employer, and they would have a direct liability here. But the only question in my mind is does that direct liability necessarily mean that they can't get insurance coverage because of 533? It does, Your Honor, because 533 prohibits indemnity for the willful act of the insured. The insured here is the county of Sacramento. It was held liable for the willful act of intentional retaliation against its employees. Are there any forms of retaliation that are not willful? There are, Your Honor. There's another subsection in 12940. It's either K or L. That can be negligent retaliation. There is an independent duty also vested in employers to reasonably try to prevent retaliation or to ferret it out when known. So there can be negligent retaliation. It's just that that was actually asserted in the underlying action by the Hagedorn plaintiffs. It was resolved in summary judgment. It was not what was tried. The only claim tried, the only cause of action tried, was intentional retaliation. And as we said, an insurer's indemnity obligation is based upon the liability established at trial. And that judgment establishes the liability as direct liability. It is the county's fault by the law, by the force of the law as it has been written. And the county is asking for an exception to Insurance Code 533. They're asking this court to include an exception. They're doing it on a couple bases, but Insurance Code 533 is clear, and we know that. Government Code 990 is what says counties may insure their liability. That code section was enacted 20 years after or more after the Insurance Code 533 was enacted, which was a predecessor from the later 1800s. However, in enacting Government Code 990, the county, the legislature, excuse me, saw fit to include a limited exception. And that limited exception was that a public entity may insure the cost of defending against claims that are otherwise barred for indemnity by Insurance Code 533. So we don't have a situation here where we have an old statute that hasn't been considered or looked at. When the legislature passed Government Code 990 allowing the county to insure its liability, it was cognizant of 533. It accounted for a component of 533, but it did not overturn or exempt the county from the prohibition against indemnity for its own willful wrongs. We have to presume that the legislature knew it, that Statute 533 existed. In fact, we know they knew it because they put in an exception into the Government Code 990, but they didn't put in the exception that the county is asking for today. And if the county wants that exception, it should go to the legislature. Are there any other questions? It appears not. Thank you, Counsel. Thank you, Your Honors. Rebuttal. Thank you for indulging me. Just a few rapid points. One is the ordinance question. We have a case defending one ordinance on facial review. The opinion suggests that there may be a problem under the Peace Officer's Bill of Rights. If they ever try to implement that ordinance, there's no evidence that ordinance has ever been implemented. Patterson v. Domino's is helpful. It's a FEHA case, not an insurability case. It reminds me of the Presbyterian Camp case, which is a fresh case from the California Supreme Court, also a liability case, not an insurability case. What's the lesson I draw from both of them? That this complex stew of competing policy goals is informed by common law principles, and that the principle that statutes and derogation of the common law are narrowly construed enlivens this whole area of analysis. Counsel, what's your response to opposing counsel's argument that liability is predicated on the underlying action and the framework of that? The claim was that the sheriff is an employee of the county, and the county accepted its liability, potential liability, as an employer. So what's your position regarding his argument that you can't undo that now? Because we conceded that we were the employer for purposes of liability. I'm not revisiting that. We did not try any insurance questions to that jury. But if you accept his premise that the insurability is predicated on the framework under which the case was tried, then how can you now say that the insurability issue should come out differently? The cases tell us that coverage is a question of law, always tried de novo. The cases tell us that the insurer, at least, cannot waive these issues, that they're questions of public policy. So I think the underlying question is, what was the law? And parties don't stipulate to the law. Yes, they make choices that have legal consequence, but I don't think accepting that we're the employer for purposes of liability is denying insurability. A couple more points that were raised. I think it's useful to circle back to the Farmers v. Santa Clara County case. Again, it's a liability case, not an immunity case, but I think it's instructive. There you've got a deputy sheriff sexually harassing his subordinates and peers, and the court says there's respondeat superior liability here, that that liability is not uninsurable. Even though the conduct of the harassing deputy was wrongful and plainly so, his employer was insurable because their conduct was not morally culpable. The bargaining unit agreements, the memorandum of understanding between the county and its labor unions, do reserve management rights, but they cannot waive California law. And there's a case that we gave you, United Teachers of Los Angeles v. Los Angeles Unified School Board, says your MOU can say whatever it wants, but state law remains what it is. So nothing in our MOUs could diminish the constitutional immunity of the sheriff and his employment actions and the rights of his employees to be governed by their superiors and not by elected politicians of other stripes. The last point that I want to address is government code section 990 issue. The way I understand my opponent's argument is he's applying the expressio unius canon to say that government code section 990 says insurability. It doesn't say anything else. End of case. It says defense. It doesn't say liability. End of case. That assumes an integrated statute that is intended to comprehensively address the issues, and it assumes a well-drafted statute. I'm not sure we have any particularly well-drafted statutes here. Well, in all fairness, that was in response to your position that this was an old statute that had never been amended. So his point was that the legislature is aware of the existence of this because they took pains to address one portion of it. So fairly interpreted. That's what I took his argument to be. But here's my rebuttal, or at least the nuance I would add. The amicus brief on behalf of our side of the case cites the legislative history of 990. It's a 1963 statute that follows the end of sovereign immunity and the beginning of the government, what's now called the Government Claims Act. And the legislative history in the Law Revision Commission reports says the goal of 990 was to avoid uninsurable liability, to make sure that our insurability was as broad as our potential liability. And that's ultimately the point we're asserting today. You've been very generous with your time. Unless you've got more questions, I will end it here. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court that completes our calendar for today. We are in recess until 10 o'clock a.m. tomorrow morning. All rise.
judges: GOULD, RAWLINSON, BRESS